FIRST NATIONAL BANK & TRUST CO., in Waynesboro, Pa., Trustee, et al., v. BELLA BASKIN by her husband and next friend, Maurice Baskin, and MAURICE BASKIN.

16 So. (2nd) 517            January Term, 1944
February 4, 1944            Special Division A

*E. L. Lockhart,* for appellants.

*Hudson & Cason* and *G. M. McNutt,* for appellees.

THOMAS, J.:

A settlor created a trust consisting of corporate securities for the benefit of his son, M. H. Landis, and three daughters, and appointed the son trustee. It was established in 1917 and was to exist for a period of twenty years.

In 1928 the trustee purchased certain property in Florida with money from the trust fund and took title in his own name. On August 13, 1930, it was agreed by the settlor and all the beneficiaries that the trustee was "unable" longer to serve and that the appellant, First National Bank and Trust Company in Waynesboro, Pennsylvania, should succeed him. It was further stipulated that five persons whose names were given should constitute an advisory committee to be consulted on matters pertaining to the proper execution of the trust.

The same day another instrument was executed by the identical parties wherein the original trustee promised "to convey to such person as may be designated by the said Trustee all of his real estate . . . the grantee to execute a declaration of trust evidencing that the . . . property is held for the purpose of applying it . . . as may seem proper to the Trustee after consultation with the advisory committee and the beneficiaries to the discharge of the indebtedness of M. H. Landis . . . which in any way effect the assets of the trust estate. . . ."

Later in the same month the original trustee, joined by his wife, conveyed to one M. T. Brown the property to which we have referred, and this grantee executed a declaration that he held it as trustee and would, upon demand of the trustee, First National Bank and Trust Company, execute such conveyances as might be necessary to enable the latter to discharge the indebtedness of the initial trustee in accordance with the agreement we have just quoted. It is obvious to us that the purpose of this contemporaneous agreement and the declaration of the trustee for the Florida property was to convert that property into cash and use the proceeds in paying such debts of the first trustee as affected the original trust estate. It is a fair interpretation of the record that the provisions relative to conveyance to trustee of prop-

erty he held were prompted by his conduct in using trust assets to purchase it in his individual name. Appended to the contemporaneous agreement of August 13, 1930, was a schedule of assets and liabilities, and under the title "Real Estate" there appeared the description of the property situated in Florida in the following exact form:

*Real Estate*

1666 Collin Ave., Miami Beach, Florida

346 West Main Street, Waynesboro, Penna.

    Sand and Clay Banks, Pond Bank

Residence of M. H. Landis, 228 Philadelphia Avenue, Waynesboro, Penna., *to be assigned as collateral security to trustee, to guarantee payment of all obligations.*

From the context and arrangement we do not agree with appellants that the clause underscored by us related to the Florida property.

The trustee, M. T. Brown, died in 1935. In 1937 the successor trustee, the bank, filed its final account in the court in Pennsylvania, and this is still pending on objections filed by the beneficiaries.

The appellees Bella Baskin and Maurice Baskin contracted in 1940 to buy the property in this State for $25,000.00, and the memorandum of sale was signed by them and the trustee-bank. The following month this bank appointed S. G. Benedict as successor to M. T. Brown. The vendees subsequently brought suit for specific performance against both trustees, the bank and Benedict, and all the beneficiaries. The plaintiffs prevailed, received their deed, and the purchase money was deposited in the registry of the court, where it now reposes awaiting the outcome of this litigation.

The question growing out of these facts is simply this: Who should have the money, the beneficiaries or the present trustee of the initial trust? The chancellor found that the latter had not qualified in Florida and could not; that no trustee had been appointed here; and that the period of existence of the trust having expired the only remaining function was settlement of accounts and discharge. He was evidently convinced that the assets exceeded the liabilities.

He concluded: "The trust was created for the benefit of the beneficiaries; they might as well receive it. To allow the funds to go to the beneficiaries will advance the settler's intent without burdening the trustee." Accordingly the final decree was entered.

The essence of the appellants' contention is that the trust declared by the holder of the title to the Florida land was independent of the one created in 1917. They insist in their briefs that this property was placed in a trust *"separate and distinct* from the trust created in 1917 . . ." (Italics supplied.) On the contrary, appellees assert that the land, or the proceeds, formed a part of the original trust. It is important to note here that First National Bank and Trust Company in its answer averred that it was the pleaders' belief "that said property was purchased with funds belonging to the aforesaid trust estate . . . ," and in a stipulation of counsel it was agreed that an identical statement contained in a petition of the beneficiaries was true. We entertain no doubt, after a perusal of the record, that all the parties knew the money paid for the Florida property was taken from the assets of the trust estate.

The trend of the argument of the appellants is toward the protection which should be afforded the creditors of the first trustee and the assistance which the court might give, under the final decree, although inadvertently, to the appellees "in taking advantage of the machinations of M. H. Landis." It seems to us that these contentions are beside the point.

It was patently the aim of the original settlor and the cestuis que trust, among whom was the person who had, as trustee, misused the funds, to repair the assets of the estate by placing the title in the name of someone who would convert it to cash under the directions of the successor trustee and the advisory committee. The similarity of the language in the declaration of the trustee of the Florida land and in the agreement executed the day the successor trustee was chosen establishes the fact that the trust in Florida was not independent but ancillary to the one in Pennsylvania. Concern for the welfare of the creditors of the initial trustee was secondary.

We cannot attribute to the item in the schedule, which we have given fully, the meaning that the Florida property was to become collateral for the payment of all obligations of the quondam trustee.

We are impressed with the sensible disposal of the case by the chancellor. As has been seen, the original trust has expired by its own terms and the trustee has made a final accounting. It would be useless to require transmission to the trustee in Pennsylvania of money now on deposit with the court in order that distribution be made there when the persons entitled to it are parties to this litigation.

We have the view that inasmuch as the creditors of M. H. Landis were considered only so far as indebtedness to them affected the "assets of the trust estate" there would be no justification for delivery of the monies to the trustee in Pennsylvania on the theory that the trust in Florida was established for their benefit.

We are convinced that the chancellor did not err, and, therefore, the final decree is—

Affirmed.

BUFORD, C. J., CHAPMAN, and ADAMS, JJ., concur.